# EXHIBIT "C"

# TO APPLICATION FOR TRO AND PRELIMINARY INJUNCTION

# DEPARTMENT OF TRANSPORTATION DISABILITY LAW GUIDANCE

## USE OF "SEGWAYs" ON TRANSPORTATION VEHICLES

This guidance document concerns the question of whether transportation entities (e.g., transit authorities, Amtrak) should permit the "Segway" personal transportation device to be used on transportation vehicles when used as a mobility device by people with disabilities.

The Segway is a two-wheeled, gyroscopically stabilized, battery-powered personal transportation device. The Segway is not designed primarily for use by individuals with disabilities, nor is it used primarily by such individuals. However, some individuals with disabilities may use a Segway as a personal mobility aid, in lieu of more traditional devices like a wheelchair or scooter.

The Department's ADA rule (49 CFR Part 37, §37.3) defines a "wheelchair" as "a mobility aid belonging to any class of <u>three or four-wheeled vehicles, designed for</u> and used by individuals with mobility impairments..." (emphasis added). By this definition, a Segway is not a wheelchair. However, a Segway, when used by a person with a disability as a mobility device, is part of the broad class of mobility aids that Part 37 intends will be accommodated (see for instance §§37.5 and 37.165). In this way, a Segway occupies a legal position analogous to canes, walkers, etc.

Because a Segway is not a wheelchair, the ADA regulation's provisions for lift and securement use specific to wheelchairs (§37.165(a) – (e)) do not apply to Segways and their users. However, §37.165(g) requires transit providers to "permit individuals with disabilities who do not use wheelchairs" to use a vehicle's lift or ramp to enter the vehicle. Individuals who do not use wheelchairs commonly use the lift together with their non-wheelchair mobility devices, such as canes, crutches or walkers. Under this provision, an individual with a disability who uses a Segway as a mobility device must be permitted to use the lift.

This is not to say that transportation providers are required to allow all Segway users to bring their devices on board a bus or train. Transportation providers may establish their own general policies regarding Segways and other devices, just as they do with respect to pets or bicycles. However, when a device is being used as a mobility device by a person with a mobility-related disability, then the transportation provider must permit the person and his or her device onto the vehicle. This is analogous to the situation in which a transportation provider that has a general policy that does not permit pets to enter, but must permit a person with a disability to bring a service animal into a vehicle.

Also, a transportation provider is not required to permit anyone -- including a person with a disability -- to bring a device onto a vehicle that is too big or that is determined to pose a direct threat to the safety of others. With respect to size, a non-wheelchair mobility device that exceeds the size and weight standards for a "common wheelchair" (i.e., 30 x 48 inches, measured two inches above the ground, and not exceeding 600 pounds, including the user) can reasonably be considered too large. The direct threat standard is intentionally stringent (i.e., requiring a determination that there is a significant risk to the health or safety of others that cannot be eliminated by modification of policies, procedures, practices, or by the provision of auxiliary aids or services). A transportation provider seeking to exclude a mobility device on direct threat grounds should first consult with the appropriate DOT operating administration for guidance.

We note that this analysis would apply to other situations. For example, a Federal Highway Administration-assisted recreational trail that normally cannot permit use by motorized vehicles should accommodate Segways when used as a mobility device by someone with a mobility-related disability.

This guidance has been approved through the Department of Transportation's Disability Law Coordinating Council as representing the official views of the Department on this matter.

September 1, 2005