IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

JOHN McELROY,

        Plaintiff,

    vs.                   **Case No. 08-4041-RDR**

SIMON PROPERTY GROUP, INC.,

        Defendant.

_____

## MEMORANDUM AND ORDER

This matter is presently before the court upon plaintiff's motion for temporary restraining order (TRO) and preliminary injunction. The court has held a hearing on this motion and is now prepared to rule. The court notes that the defendant has filed a motion to dismiss. The court shall also rule upon this motion in this memorandum and order.

This is an action brought by plaintiff pursuant to the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq*. In his complaint, plaintiff states that he is a disabled person under the ADA and his physical mobility is very limited. He further states that he uses a Segway, a two-wheeled self-balancing transportation device, as a mobility device and does not own a wheelchair or scooter. He alleges that the defendant, Simon Property Group, Inc., has informed him that he cannot use his Segway at the defendant's shopping center, West Ridge Mall, unless he signs an "Automatic Balancing Wheeled Conveyance Registration

Form" which he notes purports to have him indemnify defendant from any and all liability resulting from the operation of the Segway while in the mall. He contends that the policy of the defendant violates the ADA.

In his motion, plaintiff seeks a TRO and preliminary injunction enjoining the defendant from preventing or attempting to prevent him from participating fully and shopping in West Ridge Mall through the use of the Segway, or otherwise enjoying the use of West Ridge Mall. In the motion he states that: (1) he cannot walk more than a short distance without an assistive transportation device; (2) the use of the Segway allows him to remain vertical, which has multiple benefits for his health and well-being; (3) the use of a wheelchair or scooter provides limited line of sight and they are more difficult and expensive to transport and use; and (4) defendant has refused to allow access to use of the Segway without execution of the Automatic Balancing Wheeled Conveyance Registration Form. At the hearing, the parties agreed to consider this motion as one seeking a preliminary injunction. During the hearing, plaintiff made clear that, although he objected to various aspects of the defendant's registration form, he was primarily concerned with gaining relief from the indemnity provisions of the registration form. Accordingly, the court shall focus on this request for modification in determining the plaintiff's motion for preliminary injunction.

**MOTION TO DISMISS**

Before the court proceeds to plaintiff's motion, I shall first consider defendant's motion to dismiss.  In its motion, the defendant contends that plaintiff's complaint should be dismissed because (1) he has failed to allege facts sufficient to establish a violation of 42 U.S.C. § 12182(b)(2)(A)(ii); (2) he has requested relief beyond the bounds of what the defendant or the court can provide; and (3) he has failed to state a claim for declaratory relief.  The defendant asserts that plaintiff's complaint should be dismissed with prejudice because the defendant has provided access to the mall through other alternatives:  the use of a wheelchair and by completing the registration form.

Specifically, defendant argues that plaintiff has failed to allege facts sufficient to establish a violation of 42 U.S.C. § 12182(b)(2)(A)(ii) because (1) he failed to allege that he requested a reasonable modification to defendant's policy concerning Segways; (2) he failed to allege that a requested modification is necessary since he can access through the use of other means, including a wheelchair provided by the defendant; (3) he failed to allege that the elimination of the registration process would be reasonable since the registration process informs the user of the Segway of the safety rules in place at the mall;

and (4) his alleged potential discomfort or difficulty does not make the requested modification reasonable or necessary since plaintiff can use other mobility devices.

Plaintiff, in response, agrees that he did not explicitly allege in this complaint that he requested a modification. However, he argues that the facts included in the complaint "are enough to support a strong inference that [he] did make a request for modification to the Defendant." Plaintiff further argues that he need not specifically allege that he requested a reasonable modification to properly state a claim for which relief can be granted. Plaintiff also argues that he has alleged that he needs to have the Segway for full and equal enjoyment of the shopping center, and this is sufficient to establish that he has alleged that the modification is necessary. Plaintiff further suggests that (1) the defendant's registration process is unreasonable, and (2) requiring him to use a wheelchair is unreasonable. Plaintiff notes that other entities and governmental agencies have implemented policies permitting disabled individuals to use Segways. Plaintiff also argues that the court can grant the relief requested, including declaratory relief. Finally, plaintiff requests that he be allowed to file an amended complaint if the court finds he has not stated a claim for which relief can be granted.

In <u>Bell Atl. Corp. v. Twombly</u>, 127 S.Ct. 1955 (2007), the

4

Supreme Court changed the way courts consider motions to dismiss under Fed.R.Civ.P. 12(b)(6). Prior to Twombly, dismissal was inappropriate under Fed.R.Civ.P. 8 and 12 unless it appears beyond doubt that the plaintiff can prove "no set of facts" entitling it to relief. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957). In Twombly, the Supreme Court "retired" Conley and instructed that a complaint must contain enough factual allegations "to state a claim to relief that is plausible on its face." Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting Twombly, 127 S.Ct. at 1974). Now, the plaintiff has the burden to frame a "complaint with enough factual matter (taken as true) to suggest" that he or she is entitled to relief. Robbins, 519 F.3d at 1247 (quoting Twombly, 127 S.Ct. at 1965). In order for a complaint to satisfy this new standard, a plaintiff must do more than generally allege a wide swath of conduct. Robbins, 519 F.3d at 1247. A plaintiff must allege sufficient facts to "nudge[ ] their claims across the line from conceivable to plausible." Id. (quoting Twombly, 127 S.Ct. at 1974).

Having carefully reviewed the complaint, the court is satisfied that plaintiff has adequately alleged that he is sufficiently burdened by the Segway policy and that this burden may constitute denial of meaningful access. The complaint may be somewhat inartfully drafted, but we are persuaded that it is adequate to avoid a motion to dismiss. The inquiry beyond this

point is necessarily fact-specific and demands an examination of the relative burdens of the plaintiff and the defendant administering the policy.   The other arguments raised by the defendant concerning the scope of the relief sought by the plaintiff simply do not require dismissal.   Accordingly, the defendant's motion to dismiss shall be denied.

**MOTION FOR PRELIMINARY INJUNCTION**

With this decision, the court shall turn to plaintiff's motion for preliminary injunction.   Having carefully considered the evidence presented at the hearing, the court now makes the following findings of fact and conclusions of law.

*Findings of Fact*

John McElroy is a resident of Topeka, Kansas.  He is disabled. He suffers from heart disease, diabetes, high blood pressure and decreased circulation in his legs.   He is only able to walk approximately one block before he must rest for several minutes. Walking for any distance beyond one block causes considerable pain. McElroy has received a disabled identification card from the State of Kansas.   He also has license plates designating him as handicapped as well as handicap placards issued by the State of Kansas.

McElroy is employed by the Kansas Gaming Agency.  He is the agency's executive director.  The Kansas Gaming Agency is charged by state law with regulating the Indian casinos that operate within

the state.

McElroy purchased a Segway approximately 1½ years ago.   A Segway is a two-wheeled, self-balancing motorized transportation device, which an individual must stand on to ride.   The Segway has a top speed of 12½ miles per hour.   McElroy purchased it after his personal physician wrote him a prescription for it.   His doctor noted that the Segway would provide McElroy with "mobility."   He has no other mobility devices.

McElroy has found that the Segway is better for him than using a wheelchair.   The Segway allows him to stand, which is better for the circulation in his legs.   The Segway also provides him with superior line of sight. He also believes that the Segway provides him with some minimal level of exercise. Finally, he notes that he cannot use a wheelchair by himself because of a lack of stamina. He needs assistance to push a wheelchair.   He has also found a certain stigma associated with the use of a wheelchair.   He has noted no such stigma with his use of the Segway.

McElroy has attached a device to the back of his car that allows easy use and storage of the Segway.   He does not believe that he could transport or handle a motorized wheelchair or scooter.

Since the purchase, McElroy has driven his Segway 763 miles. He has had one accident.   Shortly after he purchased it, he backed up too quickly and fell off.   Since that time, he has had no

7

further accidents.  He has operated his Segway throughout Topeka in private businesses, state facilities and parks.  The State of Kansas has allowed him to operate the Segway within the "common areas of the greater Capitol Complex area" under the following conditions:  (1) operate the device in a safe and prudent manner at reasonable speeds given the conditions at the facility with appropriate regard for the user's safety and those around the user; and (2) keep control of the device at all times.

In July 2007, McElroy contacted an employee of the West Ridge shopping mall in Topeka concerning the use of the Segway there. West Ridge Mall is the major shopping center in Topeka.  The defendant is owner and operator of the mall.  The defendant controls only the common areas within the mall and the parking. All of the vendors at the mall either lease their space from the mall or own their property.  The leases do not provide the defendant with the ability to implement and control policies and procedures concerning the internal operations of the tenants' business.  The defendant owns approximately 300 shopping malls across the country.  McElroy had shopped at the mall on prior occasions.  Prior to the purchase of the Segway, he had stopped shopping there because of his walking problems.

An employee of the mall told McElroy that he could not operate his Segway in their facility.  Shortly thereafter, McElroy received a telephone call from Arlin Meats, the manager of West Ridge Mall.

Meats told McElroy that the defendant was revising its rule for Segways and would issue new rules shortly.  McElroy later received an e-mail providing the new policy.  The new policy did allow the use of Segways in the common areas in the mall to which members of the general public have access if the user was mobility disabled and agreed to sign a document entitled "Automatic Balancing Wheeled Conveyance Registration Form."

The registration form required the user of the Segway to provide certain personal information.  The form also required the user to sign the form and attest that:  "1) I have a mobility disability; 2) I have presented a disability placard or other sufficient documentation confirming that I have a mobility disability; 3) the Automatic Balancing Wheeled Conveyance ('ABWC') I intend to use while visiting West Town (sic) Mall (the 'Property') is used as a disability mobility device; 4) my mobility disability does not preclude safe operation and use of my ABWC."

In exchange for being permitted to use his Segway, McElroy was also required to agree, <u>inter alia</u>, to the following:

> I . . . agree at my sole cost and expense, to defend, indemnify, and hold harmless, West Town Mall Joint Venture and its owners, partners, officers, directors, trustees, shareholders, agents, servants, employees, contractors, parents, subsidiaries, and affiliates ("Owner Parties") from and against any and all claims, liabilities, obligations, losses, penalties, actions, suits, damages, expenses, disbursements (including legal fees and expenses), or costs of any kind and nature whatsoever ("Claims") for property damage, bodily injury and death in any relating to or resulting, in whole or in part, from the use and operation of my ABWC.  The

9

Indemnity set forth herein will apply regardless of the alleged or actual active or passive negligence or the sole, joint, concurrent, or comparative negligence of any of the Owner Parties and regardless of whether liability without fault or strict liability is imposed or sought to be imposed upon of the Owner Parties.

The user is also required to abide by the following rules and regulations:  (1) the ABWC cannot be operated faster than normal walking speed, which is approximately 2 to 3 miles per hour; (2) the ABWC is not permitted on escalators, stairs or steps, but is allowed on elevators; (3) the ABWC must yield to pedestrian traffic; (4) must strictly observe and adhere to applicable safety rules and regulations governing operation and use of the ABWC as published by the manufacturer of the unit; (5) must remain with the ABWC at all times; (6) must remain in control of the ABWC at all times; (7) may not use a cell phone while operating the ABWC; (8) use of an ABWC may be temporarily prohibited in all or any part of the mall during periods of congestion and until the congestion is cleared; (9) the ABWC may not be operated side-by-side with other ABWCs; (10) must check in with Guest Services each time the mall is visited; and (11) the registration card issued must be prominently displayed on the ABWC or the user at all times.

The defendant believes the registration form serves the following functions:  (1) allows the mall's guest services personnel to provide the Segway user with the rules and regulations on Segway use in the mall; and (2) notifies mall personnel that an individual using a Segway in the mall is doing so as a mobility

10

aid.  The defendant has generally prohibited the use of Segways in its properties, except as a mobility aid, due to safety concerns.

McElroy has concerns about some of the various rules and regulations adopted by the defendant concerning the use of the Segway.  However, he strongly objects to the indemnification provisions of the registration agreement.  He is not willing to sign the registration agreement if the indemnification provisions remain in it.

The defendant allows the use of motorized wheelchairs and scooters within its properties by mobility disabled patrons without the requirement that the users sign any type of agreement or engage in a registration process.  The defendant suggested that the registration form is needed for Segways due to safety concerns. Meats pointed to the following differences between Segways and other motorized devices:  (1) the speed of the Segway; (2) the need for proper training to use the Segway; and (3) past recalls of the Segway.  The defendant provides non-motorized wheelchairs free of charge to any guest who requests the use of one at the guest services desk, which is located about 100 feet from one of the entrances to the mall.  The guest does have to sign in to obtain the wheelchair, but the process is designed to control the return of the wheelchair.  The user is not provided any rules and regulations and does not have to agree to any indemnity provisions.

The defendant utilizes Segways at their properties around the

11

country.   The employees who use the Segways have been properly trained.

*Conclusions of Law*

Generally, in order to prevail on a motion for preliminary injunction, plaintiff must show:  (1) a substantial likelihood of prevailing on the merits; (2) irreparable harm in the absence of the injunction; (3) proof that the threatened harm outweighs any damage the injunction may cause to the party opposing it; and (4) that the injunction, if issued, will not be adverse to the public interest. <u>Aid for Women v. Foulston</u>, 441 F.3d 1101, 1115 (10th Cir. 2006).   If the movant establishes the second, third and fourth factors, then "the first factor is relaxed to require only that the movant raise questions so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate inquiry." <u>Longstreth v. Maynard</u>, 961 F.2d 895, 902 (10th Cir. 1992).

Certain preliminary injunction requests require the movant to meet a heightened burden.   <u>See</u> <u>SCFC ILC, Inc. v. Visa USA, Inc.</u>, 936 F.2d 1096, 1098-99 (10th Cir. 1991).   The defendant contends that the heightened standard should apply in this case because plaintiff is (1) seeking to alter the status quo, and (2) seeking to obtain a substantial part of the relief he would recover upon a trial on the merits.

In <u>Rothberg v. Law School Admission Council, Inc.</u>, 300

F.Supp.2d 1093, 1102-03 (D.Colo.), <u>rev'd on other grounds</u>, 102 Fed.Appx. 122 (10th Cir. 2004), Judge Daniel of the District Court of Colorado rejected the defendant's argument in the context of an ADA case:

> The parties have not cited any case in the Tenth Circuit that has applied the heightened standard set forth in <u>SCFC</u> in the context of a request for injunctive relief under a civil rights statute. Moreover, courts in this circuit have not applied the heightened standard in the ADA context, despite the fact that the plaintiff was seeking relief that did not preserve the status quo. <u>See</u>, <u>e.g.</u>, <u>Keirnan v. Utah Transit Authority</u>, 339 F.3d 1217, 1220-22 (10th Cir. 2003) (plaintiff seeking an order to cause transit authority to suspend its rule prohibiting transporting oversized wheelchairs); <u>Pahulu v. University of Kansas</u>, 897 F.Supp. 1387, 1389 (D.Kan. 1995) (plaintiff seeking order requiring university to permit him to play football). Accordingly, I decline to adopt the heightened standard because I find that would be antithetical or contrary to the fact that the ADA is a remedial statute.
>
> Moreover, the Tenth Circuit holds that where a statute authorizes the issuance of injunctive relief, "the discretion of the trial court in issuing or withholding an injunction is to be 'exercised in light of the objectives of the Act.'" <u>Atchison, Topeka and Santa Fe Railway Co. v. Lennen</u>, 640 F.2d 255, 258 (10th Cir. 1981) (quotation omitted). In that situation, "[t]he court is to be guided by the primary objectives of the statute involved, using public interest standards rather than private litigation requirements." <u>Id</u>. at 258-59. It is not necessary in such a circumstance for the plaintiff to show irreparable injury or inadequacy of legal remedies. <u>Id</u>. at 259; <u>see also Mical Communications, Inc. v. Sprint Telemedia, Inc.</u>, 1 F.3d 1031, 1035 (10th Cir. 2003).
>
> . . . . .
>
> I further find that to apply a "heightened standard" every time an ADA plaintiff seeks an accommodation under Title III would lessen the effectiveness of the statutory remedy of preliminary injunctive relief that Congress afforded plaintiffs under the ADA, frustrate the

vindication of important public policy and protect illegal discrimination. Thus, I decline to apply the heightened standard set forth in SCFC in the particular circumstances of this case. . . .

The court agrees with the analysis and conclusion reached by Judge Daniel in Rothberg.

**Substantial Likelihood of Success on the Merits**

Title III of the ADA prohibits discrimination against persons with disabilities in places of public accommodation.  42 U.S.C. § 12182(a).  The purpose of the ADA is to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities."  42 U.S.C. § 12101(b)(1).  The goal of the ADA is "to assure equality of opportunity, full participation, independent living, and economic self-sufficiency" for the disabled.  42 U.S.C. § 12101(a)(8).  The ADA provides a private right of action for preventative relief, including an application for a permanent or temporary injunction or restraining order for "any person who is being subjected to discrimination on the basis of disability in violation of" Title III.  42 U.S.C. §§ 12188(a)(1), 2000a-3(a).  A successful plaintiff may also be entitled to attorney fees and costs.  42 U.S.C. § 2000a-3(b).  Section 12182(a) provides:  "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place

14

of public accommodation." 42 U.S.C. § 12182(a).

In order to establish a violation of § 12182(a), a plaintiff must prove that he 1) has a disability, 2) was discriminated against on the basis of that disability, 3) was thereby denied goods or services, 4) by a place of public accommodation by the owner or operator of that facility." <u>Sharrow v. Bailey</u>, 910 F. Supp. 187, 191 (M.D. Pa. 1995)). In order to prevail on his ADA claim, plaintiff must prove that (1) he is disabled, (2) his requests for accommodation are reasonable, and (3) that those requests have been denied. <u>Axelrod v. Phillips Academy</u>, 46 F.Supp.2d 72, 83 (D.Mass. 1999). "The term 'disability' means, with respect to an individual–(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Public accommodations under Title III include: restaurants, hotels, doctor's offices, pharmacies, grocery stores, shopping centers, and other similar establishments. 42 U.S.C. § 12181(7).

There is no dispute here that the plaintiff is disabled and the defendant is a place of public accommodation. The issue presented is whether plaintiff has made a reasonable request for accommodation and been denied by the defendant. As noted previously, the court's focus is upon plaintiff's request for

15

elimination of the indemnification provisions of the defendant's registration form.

At this juncture, the court finds that both the registration process and the rules and regulations established by the defendant are reasonable.  Both parties recognize that the Segway presents some safety issues due to its size and its speed.  The efforts of the defendant to regulate its use in general are appropriate.  The defendant has sufficiently established to the court at this time that the registration process and the rules and regulations are appropriate.  The registration form appears to promote safety because it allows the defendant to identify a disabled mobility user.  It also promotes safety because it exposes the user to the defendant's safety rules.

The court, however, finds plaintiff has sufficiently demonstrated a substantial likelihood of success on the merits of the inclusion of the indemnification provision in the registration form.  At this time, the court finds the requirement that a mobility disabled user of a Segway agree to the indemnification provision of the registration process unreasonable.  The court notes that the defendant has made no effort in any of it briefs or in its arguments to the court to justify this provision.  It is overreaching and, frankly, unconscionable because it clearly requires the user of the Segway to indemnify the defendant for all claims arising from the use of the Segway, including those caused

16

by the negligence or fault of the defendant.  No other patron of
the mall is forced to agree to such provisions in order to gain
entry.  The safety issues concerning the operation of the Segway
are addressed by the registration form with the accompanying rules
and regulations.  The indemnity provisions do nothing to address
the safety concerns.  Rather, they simply appear to be an effort by
the defendant to shift liability.  During argument at the hearing,
defense counsel made some effort to suggest that the defendant was
not seeking indemnification from plaintiff for defendant's
negligence.  The clear language of the indemnification provision
suggests otherwise.

**Irreparable Harm**

To constitute irreparable harm, an injury must be certain,
actual, and not merely theoretical.  Universal Engraving, Inc. v.
Duarte, 519 F.Supp.2d 1140, 1148 (D.Kan. 2007).  At least two
district courts have concluded that a plaintiff seeking injunctive
relief under the ADA need not demonstrate irreparable harm.
Rothberg, 300 F.Supp.2d. at 1102; Special Education Services v.
RREEF Performance Partnership-I, 1995 WL 745964 at *2 (N.D.Ill.
1995).  The court is inclined to agree with these cases, but I
believe that plaintiff has demonstrated irreparable harm in any
event.

Without injunctive relief, plaintiff will be unable to have
the full and equal enjoyment of the facilities offered by the

17

defendant.  The defendant's shopping mall is the primary shopping area in Topeka, and it provides opportunities that do not exist elsewhere in the community.  Moreover, there is no compensation available to the plaintiff, and the Segway presents the plaintiff with the only reasonable alternative to use of the defendant's shopping mall.  The court is not persuaded that the alternatives noted by the defendant are appropriate for plaintiff.  The first alternative noted by the defendant--the use of a wheelchair provided at no charge--was refuted by evidence that plaintiff provided that he cannot use a wheelchair by himself because he lacks the stamina to move it.  The court also finds the other alternative suggested by the defendant--sign the registration form as it exists and use its facilities--fraught with difficulties.  If plaintiff were to do so and an accident would occur due to defendant's negligence, the indemnification provision would appear to obligate plaintiff to pay all damages and claims.  The court believes this places a significant, if not irreparable, burden on plaintiff.

**Balance of Harms**

The court believes that the balance of harms tips decidedly in plaintiff's favor.  The threatened injury to plaintiff substantially outweighs any harm that the injunctive relief will cause the defendant.  The court finds that the defendant will suffer no harm through the issuance of this injunction.  The

18

defendant will gain another patron to its place of business.  The defendant's safety concerns are addressed through the registration process and the rules and regulations.  Plaintiff will have the opportunity to use defendant's facilities without having to agree to indemnify the defendant.

**Public Interest**

The defendant has failed to show how the granting of the aforementioned injunctive relief is adverse to the public interest.  The public interest actually appears to be served by the granting of the preliminary injunction because it upholds the goal and purpose of the ADA, i.e., providing access to public accommodations to the disabled.

**Requirement of Security**

The court does not find that any harm will be done to the defendant by granting this preliminary injunction.  Under such circumstances, the court shall not require the plaintiff to post any security under Fed.R.Civ.P. 65(c).  See Coquina Oil Corp. v. Transwestern Pipeline Co., 825 F.2d 1461, 1462 (10th Cir. 1987).

**IT IS THEREFORE ORDERED** that defendant's motion to dismiss (Doc. # 19) be hereby denied.

**IT IS FURTHER ORDERED** that plaintiff's motion for preliminary injunction (Doc. # 3) be hereby granted.  The defendant, its employees, agents, assigns and successor, and all persons in active concert or participation with it, are hereby enjoined from

exercising a policy or procedure that requires plaintiff to indemnify it for claims arising from the use of a Segway within the common areas or the parking of West Ridge Mall.  The court shall not require plaintiff to post any security.  This order is binding upon service until vacated or modified by court order.

**IT IS SO ORDERED.**

   Dated this 15th day of September, 2008 at Topeka, Kansas.


                                   s/Richard D. Rogers
                                   United States District Judge